UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBRA VANESSA WHITE, | CASE NO. C19-0284-JCC |
| Plaintiff, | ORDER |
| v. | |
| RELAY RESOURCES and GENERAL SERVICES ADMINISTRATION, | |
| Defendants. | |

This matter comes before the Court on Defendants General Services Administration ("GSA"), Emily Murphy, and the United States' (collectively the "Government Defendants") motion to dismiss (Dkt. No. 53). Having considered the parties' briefing and the relevant record, the Court STRIKES the claims against the Government Defendants in Plaintiff's amended complaint (Dkt. No. 47) and DENIES the Government Defendants' motion to dismiss as moot.

I. **BACKGROUND**

The Court previously set forth the underlying facts of this case and will not repeat them here. (*See* Dkt. No. 40 at 1–3.) On July 9, 2019, the Court dismissed all of Plaintiff's claims against GSA. (*See* Dkt. No. 41.) In doing so, the Court granted Plaintiff leave to amend her breach of contract claim to allege, if she could, facts establishing (1) that a contract existed between Plaintiff and GSA; (2) the specific provisions which imposed a duty on GSA; and (3)

how GSA breached the contract. (*See id.* at 7.) Plaintiff subsequently filed an amended complaint, but she did not amend her breach of contract claim. (*See* Dkt. No. 47.) Instead, Plaintiff added Emily Murphy, the Administrator of GSA, and the United States as defendants and asserted 10 new claims against the Government Defendants.[1] Those defendants now move to dismiss Plaintiff's new claims on the grounds that (1) Plaintiff did not comply with the Court's July 9 order, (*see* Dkt. No. 53 at 9), and (2) the amended complaint fails to state a claim for which relief can be granted, (s*ee id.* at 9–19).

## II. DISCUSSION

### A. Plaintiff's Compliance with the Court's Order

The Government Defendants construe the Court's July 9 order as allowing Plaintiff to amend only her breach of contract claim and prohibiting her from adding additional claims. This construction is erroneous. (*See id.* at 9.) The Court's July 9 order explained what Plaintiff had to do to amend her breach of contract claim; it did not limit Plaintiff's ability under Federal Rule of Civil Procedure 15(a) to seek to amend her complaint by adding new claims. *See Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 677 (8th Cir. 2013) (quoting *Whitaker v. City of Houston*, 963 F.2d 831, 835 (5th Cir. 1992)) (holding that a party may amend under Rule 15(a) unless an order "expressly or by clear implication dismiss[es] the action"); (Dkt. No. 41 at 7). The only order relevant to Plaintiff's ability to add new claims is the Court's minute entry on July 6, 2019, which provides that pleading amendments are due by November 8, 2019. (*See* Dkt. No. 45 at 1.) That deadline has not yet passed.

Although the Court's July 9 order does not prohibit Plaintiff from amending her complaint under Rule 15(a), she still must comply with the Rules' requirements before doing so.

---

[1] It is, in fact, unclear whether Plaintiff brings claims against the United States. The caption to the amended complaint includes "UNITED STATES of AMERICA (HEAD OF GSA)," but the body of the complaint does not list the United States as one of the parties. (*See* Dkt. No. 47 at 1–3.) However, the Court's analysis of Plaintiff's new claims is the same regardless of whether the United States is named as a defendant.

Rule 15(a)(1) allows a plaintiff to amend a complaint "once as a matter of course"—*i.e.*, without the court's approval—within (1) 21 days after the plaintiff serves the complaint or (2) 21 days after the defendant serves a motion under Rule 12(b), (e), or (f), whichever is earlier. If the plaintiff can no longer amend their complaint as a "matter of course," then they "may amend [their] [complaint] *only* with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2) (emphasis added). To seek the court's leave, a party must file a motion. Fed. R. Civ. P. 7(b)(1).

Plaintiff appears to have violated Rules 7(b)(1) and 15(a) when she amended her complaint to add 10 new claims. Plaintiff could not amend her complaint as a matter of course because Defendant Relay Resources filed a motion to dismiss Plaintiff's original complaint on April 29, 2019—93 days before Plaintiff filed her amended complaint. (*See* Dkt. Nos. 15, 47.) In addition, the Court's July 9 order granted Plaintiff leave to amend only as to her contract claim; it did not give her permission to add 10 entirely new claims. (*See* Dkt. No. 41 at 7.) Accordingly, if Plaintiff wished to amend her complaint to add new claims, then Rules 7(b)(1) and 15(a)(2) required that she obtain Defendants' written consent or file a motion requesting leave from the Court. Plaintiff did neither.

Plaintiff's failure to formally seek leave to amend her complaint leaves the Court caught between two competing principles. On the one hand, "*pro se* parties are held to the same procedural requirements as represented parties." *Steward v. Emerald Corr. Mgmt., LLC*, 2014 WL 12798369, slip op. at 3 (D.N.M. 2014) (citing *DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993)). On the other hand, courts "ha[ve] a duty to ensure that pro se litigants do not lose their right to a hearing on the merits . . . due to ignorance of technical procedural requirements." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To reconcile these principles, "[d]istrict courts have liberally construed an amended complaint, that was filed without leave of court, as a motion for leave to amend the complaint." *Levy v. FCI Lender Servs., Inc.*, 2019 WL 3459030, slip op. at 2 (S.D. Cal. 2019) (citing *Baker v. G.D. Lewis*, 2012 WL

1932867, slip op. at 1 (N.D. Cal. 2012); *Miller v. LaMontagne*, 2011 WL 7379862, slip op. at 1 (S.D. Cal. 2011); *Dauven v. George Fox Univ.*, 2010 WL 6089077, slip op. at 24 (D. Or. 2010)); *see also Wennihan v. AHCCCS*, 515 F. Supp. 2d 1040, 1043–44 (D. Ariz. 2005); *Hardrick v. Werner Enterprises, Inc.*, 2005 WL 8154641, slip op. at 3 (N.D. Ga. 2005). While courts do not universally follow this approach, *see, e.g.*, *Battles v. Wash. Metro. Area Transit Auth.*, 272 F. Supp. 3d 5, 12 (D.D.C. 2017) (striking amended complaint because *pro se* plaintiff failed to seek the court's permission before filing the complaint), the Court finds the approach appropriate in this case. Construing Plaintiff's amended complaint as a motion for leave to amend will not prejudice any party given that the parties have fully briefed the merits of Plaintiff's new claims. (*See* Dkt. Nos. 52–54, 56, 59, 66, 68, 70, 75.) In addition, forcing Plaintiff to formally seek leave to file an amended complaint would simply result in the parties duplicating their previous briefing.

Because the Court construes Plaintiff's amended complaint as a motion for leave to amend, the Court must analyze Plaintiff's implied "motion" under Rule 15(a) instead of Rule 12(b). Rule 15(a)(2) states that "[the] court should freely give leave when justice so requires." However, leave "need not be granted where the proposed amendment is futile." *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011). A proposed amendment is futile if it would be "subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). The test for whether a proposed amendment is futile is, therefore, identical to the test for whether a pleading survives a challenge under Rule 12(b)(1) or (6).[2] *See Nordyke*, 644 at 788 n.12 (citing *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). Accordingly, Plaintiff must establish that the Court has subject matter jurisdiction over each of her new claims. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Plaintiff must also allege sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*,

---

[2] Given that the tests are identical, the Court will treat the Government Defendants' arguments under 12(b)(1) and (6) as arguments for why Plaintiff's proposed amendments are futile.

556 U.S. 662, 677–78 (2009). A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678.

**B.     The Merits of Plaintiff's New Claims**

Plaintiff proposes to add 10 claims against the Government Defendants. For the reasons explained below, the Court finds that those claims are futile.

1.     Count I

In Count I, Plaintiff brings a claim under 18 U.S.C. § 371 for "Defrauding the United States." (*See* Dkt. No. 47 at 8.) It is unclear, however, how the Government Defendants allegedly defrauded the United States; Plaintiff's factual allegations relate only to her inability to "use the computer" or access other information. (*See id.*) More importantly, 18 U.S.C. § 371 "do[es] not provide for a private right of action." *Henry v. Universal Tech. Inst.*, 559 Fed. App'x 648, 650 (9th Cir. 2014). Count I therefore fails to state a claim.

2.     Count II

For Count II, Plaintiff brings a claim under 18 U.S.C. Chapter 47. Chapter 47, like the rest of the United States Criminal Code, "provide[s] no basis for civil liability." *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Accordingly, Count II fails to state a claim.

3.     Count III

Count III appears to be a due process claim. Plaintiff alleges that the Government Defendants violated her "liberty to work" by "treating [her] as if she is a criminal . . . and requir[ing] [her] to provide an opportunity to appeal to EEOC and GSA EEO to explain her side of the story." (*See* Dkt. No. 47 at 9.) However, even assuming that these acts violated Plaintiff's protected interests, Plaintiff cannot bring a due process claim against a federal agency under either *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), or the Federal Tort Claims Act, 85 U.S.C. § 1346, *et seq. See FDIC v. Meyer*, 510 U.S. 471, 485–86 (1994) ("An extension of *Bivens* to agencies of the Federal Government is not supported

by the logic of *Bivens* itself."); *Cato v. United States*, 70 F.3d 1103, 1111 (9th Cir. 1995) (quoting *United States v. Meyer*, 510 U.S. 471, 478 (1994)) ("[T]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims."). In addition, Plaintiff does not allege that Ms. Murphy took any specific acts that violated Plaintiff's due process rights. (*See* Dkt. No. 47 at 9.) Accordingly, Count III fails to state a claim against the Government Defendants. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

    4.    Count IV

Count IV is a claim for "Violation of the Wagner Act Known as the National Labor Relations Act of (1935)." (Dkt. No. 47 at 9–10.) The National Labor Relations Board has exclusive jurisdiction over claims brought under the NLRA for unfair labor practices by employers. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 108 (1989). Count IV therefore fails to state a claim over which the Court has jurisdiction.

    5.    Count V

In Count V, Plaintiff alleges that the Government Defendants violated Title VII by refusing to enter into a contract with Plaintiff because of her "deaf accent." (*See* Dkt. No. 47 at 10.) But as previously explained in the Court's July 9 order, Title VII requires a plaintiff to exhaust her administrative remedies by (1) filing a pre-complaint within 45 days of the alleged discriminatory behavior; (2) filing a formal complaint with the agency alleged to have participated in the discrimination; and (3) receiving notice of a final agency decision from the agency or an administrative law judge. (*See* Dkt. No. 41 at 4) (citing *Vinieratos v. U.S. Dep't of Air Force through Aldridge*, 939 F.2d 762, 768 (9th Cir. 1991)). Plaintiff has still not alleged facts sufficient to show that she has exhausted her administrative remedies. (*See* Dkt. No. 47 at 10.) Thus, Count V does not state a claim for which the Court can grant relief.

### 6. Count VI

Count VI is a restatement of Plaintiff's disability discrimination claim from her original complaint. (*Compare* Dkt. No. 47 at 10–11, *with* Dkt. No. 3 at 12–16.) The Court dismissed that claim with prejudice because Plaintiff's claim under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, is pre-empted by the Rehabilitation Act of 1973, 28 U.S.C. § 701, *et seq.* (*See* Dkt. No. 41 at 3) (citing *Johnston v. Horne*, 875 F.2d 1415, 1418–19 (9th Cir. 1989)). Because the Court dismissed that claim with prejudice, Plaintiff is barred from it again.

### 7. Count VII

For Count VII, Plaintiff cites 29 C.F.R. § 1606.7, appears to allege that GSA required her to "Speak English" (as opposed to sign language), and concludes that this is why the agency refused to enter into a contract with her. (*See* Dkt. No. 47 at 11–12.) These allegations are identical to the allegations in Counts V and VI, (*see id.* at 10–11), which fail to state a claim for which the Court can grant relief. Moreover, § 1606.7 does not create a private cause of action that would allow Plaintiff to get around the defects in Counts V and VI. Section 1606.7, like all Equal Employment Opportunity Commission guidelines, does not have the force of law; it merely reflects "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 141–42 (1976); *see also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 431 (1975).

### 8. Count VIII

Plaintiff labels Count VIII "Negligence/Misrepresentation." (*See* Dkt. No. 47 at 12.) To the extent that Count VIII alleges a tort claim, the Court lacks subject matter jurisdiction over the claim because Plaintiff did not present a formal claim to GSA's Office of General Counsel. (*See* Dkt. No. 41 at 5.) In addition, "[t]he United States has not waived its sovereign immunity with respect to fraud and negligent misrepresentation claims." *West v. City of Mesa*, 708 Fed. App'x 288, 291 (9th Cir. 2017) (citing *Pauly v. USDA*, 348 F.3d 1143, 1151–52 (9th Cir. 2003)). Plaintiff cannot, therefore, bring a claim for negligence/misrepresentation against the

Government Defendants in this Court.

### 9. Count IX

Count IX purports to be a claim under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961–1968. However, civil RICO actions cannot be brought against federal agencies or federal employees sued in their official capacities. *See Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1997) (dismissing RICO claims against a state hospital "because government entities are incapable of forming a malicious intent"); *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) (concluding that the federal government cannot engage in "racketeering activity" because it cannot be "charged," "indicted," or "punished" for violations of state and federal criminal provisions); *United States v. Bonanno Org. Crime Family of La Cosa Nostra*, 879 F.2d 20, 23–27 (2d Cir. 1989) (observing that RICO lacks an "unequivocal expression of congressional intent to expose the government to RICO liability"). Consequently, Count IX fails to state a claim against GSA or Ms. Murphy in her official capacity.

Count IX also fails to state a claim against Ms. Murphy in her individual capacity. To state a claim under RICO, a plaintiff must allege "one or more defendant 'persons' conducted or participated in the activities of an 'enterprise' through a pattern of racketeering activity consisting of at least two predicate acts cognizable under RICO." *Capitol West Appraisals, LLC v. Countrywide Fin. Corp.*, 759 F. Supp. 2d 1267, 1272 (W.D. Wash. 2010). These allegations must be made "with particularity" and must include "'the who, what, when, where, and how,' of the misconduct charged." *See id.* at 1271 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104–05 (9th Cir. 2003)). Count IX, however, does not state with particularity the wrongful acts that Ms. Murphy engaged in. Count IX instead begins with an unclear statement about "Defendants[']" efforts to "manipulate the legal system." (*See* Dkt. No. 47 at 13–14.) It then asserts that "Defendants have actively sought to hamper government anti-extremists by direct propaganda." (*See id.*) Finally, Count IX ends by listing provisions of the United States

Code that Defendants have allegedly violated. (*See id.*) These allegations do not satisfy the pleading standard for a civil RICO claim. *See Capitol West Appraisals*, 759 F. Supp. 2d at 1271–72.

### 10. Count X

Count X is titled "Americans with Disability Notification Act of 2011." (*See* Dkt. No. 47 at 14.) "[T]he ADA Notification Act has been introduced multiple times . . . [but it] never became law." *Raetano v. Kally K's, Inc.*, 2009 WL 651808, slip op. at 7 n.3 (M.D. Fla. 2009). The Act cannot, therefore, provide the basis for any claim in this case.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that it would be futile for Plaintiff to amend her complaint to add claims against the Government Defendants. The Court therefore DENIES Plaintiff leave to amend and STRIKES the claims against the Government Defendants that she has raised in her amended complaint (Dkt. No. 47). The Court also DENIES the Government Defendants' motion to dismiss (Dkt. No. 53) as moot. Finally, the Court DISMISSES the Government Defendants—GSA, Ms. Murphy, and the United States—from the case.

DATED this 31st day of October 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE